UNITED STATES DISTRICT COURT
IN THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| STATE OF INDIANA EX REL. KEN ELDER, <br><br> Plaintiff-Relator, <br><br> v. <br><br> JPMORGAN CHASE BANK, N.A., <br><br> Defendant. | Case No. 1:22-cv-00696 |

## NOTICE OF REMOVAL

**PLEASE TAKE NOTICE** that, pursuant to 28 U.S.C. §§ 1331, 1441, and 1446, JPMorgan Chase Bank, N.A. ("JPM"), by its undersigned counsel, hereby removes the above-titled action (the "Action") filed by Plaintiff-Relator Ken Elder ("Relator") from Marion Superior Court, State of Indiana, Cause No. 49D07-1909-PL0037448, to the United States District Court for the Southern District of Indiana. In support of this removal, JPM states the following:

**I. INTRODUCTION**

1. Within this Indiana False Claims and Whistleblower Protection Act ("IFCA") *qui tam* action, Relator alleges that JPM, a national bank domiciled in Ohio, somehow defrauded Indiana by reporting and remitting the proceeds of abandoned property – namely, certain unclaimed cashier's checks – to the state of Ohio instead of Indiana (or other non-Ohio states).

2. While Relator cites Indiana unclaimed property law in an effort to build his case, it is well-established that the question of *where* to report and remit funds for unclaimed cashier's checks – as between potential escheating states – is a matter of federal, not state, law. In fact, through three cases, the Supreme Court has enshrined the principle that federal law alone

1

determines where abandoned intangible property should escheat, such that individual states are "without constitutional power to provide a rule." *Texas v. New Jersey*, 379 U.S. 674, 677 (1965); *see also Pennsylvania v. New York*, 407 U.S. 206 (1972); *Delaware v. New York*, 507 U.S. 490 (1993). As such, federal law is essential to the allegations in this *qui tam* suit, and JPM is removing the action on that basis.

3. At the appropriate juncture, JPM will address and defeat the allegations made in the Fourth Amended Complaint ("4AC" or "Complaint"), which are misguided and misdirected.[1] For purposes of this Notice, however, the only question is whether the Complaint causes of action necessarily depend on the application of federal law. As summarized herein, they do and, therefore, are removable to this Court on the basis of federal question jurisdiction.

4. Pursuant to 28 U.S.C. § 1446(a) and Local Rule 81-2, attached hereto as **Exhibit 1** are copies of the Complaint and the Summons, which constitute "a copy of all process, pleadings, and orders served upon."[2]

---

[1] The notion that JPM should face false claims act liability under these circumstances – where the cashier's check proceeds are accounted for and in the custody of Ohio – is far-fetched to say the least. Relator's allegation of fraud is rendered even more untenable given that JPM's practices followed federal common law. Notably, after a thorough investigation, the Indiana Attorney General – who has responsibility both for the state's unclaimed property administration and for investigation IFCA violations – declined to intervene in Relator's lawsuit.

[2] The Clerk's Office of Marion Superior Court has stated that the docket is "locked" and thus the docket and any case documents beyond what Relator has served on JPM are not accessible to JPM at this time. As such, JPM is not able to attach a copy of the state court docket sheet in the Action or any other "pleadings, motions, orders, and all other filings" in the Action pursuant to Local Rule 81-2 or specify when the initial complaint and any of the amendments were filed.

5.       Pursuant to 28 U.S.C. § 1446(a) and Local Rule 81-2, JPM attaches to this Notice of Removal ("Notice") and incorporates by reference **Exhibit 2**, which includes a true and correct copy of the Complaint served upon JPM.[3]

6.       As the Complaint shows, Relator is not making allegations about *whether* unclaimed cashier's checks are subject to escheatment.  Indeed, as noted, the Complaint acknowledges that Ohio has escheated the checks in question.  *See, e.g.*, 4AC ¶¶ 22-24, 26, 29, 32, 36.  Rather, the allegations in this case depend on establishing *where* – as between "non-Ohio states, including Indiana" and Ohio – JPM was obligated to report and remit the cashier's checks in question.  Relator contends that JPM should have reported and delivered the cashier's checks to the "State of Indiana or to other non-Ohio States" and not to Ohio, and that the failure to do so gives rise to false claims act liability under the IFCA through supposed violations of the Indiana Unclaimed Property Act.  *See, e.g.*, 4AC ¶¶ 28-32, 34-36, 44-46, 64-66.

7.       Thus, Relator, purporting to act on behalf of Indiana, improperly seeks to transform a potential dispute among the states regarding *where* to report for escheatment purposes certain unclaimed cashier's checks – Ohio or "non-Ohio states, including Indiana" – into an IFCA case. Indeed, this inherent conflict among the states created by Relator's allegations is apparent from the face of the Complaint, which specifically alleges that the property in question is in ***Ohio's*** custody while contending that the property should be in the custody of ***Indiana*** or some ***other non-Ohio state***.  *See, e.g.*, 4AC ¶¶ 25-26.

---

[3] As discussed in footnote 2 above, JPM has been provided a copy of the Fourth Amended Complaint only and does not yet have access to the four earlier versions of the complaint.

## II. PROCEDURAL BACKGROUND

8. Relator commenced the Action by filing a complaint under seal in Marion Superior Court, titled *State of Indiana ex rel. Ken Elder v. JPMorgan Chase, N.A.*, Cause No. 49D07-1909-PL0037448. It appears from the title of the un-dated Complaint that Relator served on JPM ("Fourth Amended Qui Tam Complaint File Under Seal Pursuant to Indiana False Claims and Whistleblower Protection Act, IC §5-11-5.5-4(c)(2)") that Relator amended his initial complaint four times.

9. Pursuant to the IFCA, Ind. Code § 5-11-5.5-1 *et seq.*, the Attorney General of Indiana (and/or the Inspector General) investigated Relator's allegations. Ind. Code § 5-11-5.5-3. After that investigation, the Attorney General must have informed the Marion Superior Court that the State was declining to intervene in Relator's *qui tam* action. *See id.* at §§ 5-11-5.5-3(e) & 5-11-5.5-4 ("The complaint shall not be served on the defendant until the court orders the complaint served on the defendant following the intervention or the election not to intervene of the attorney general or the inspector general.").

## III. REMOVAL IS TIMELY

10. Relator served the Complaint on JPM on March 18, 2022. Removal is timely under 28 U.S.C. § 1446(b). *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999).

## IV. THE COMPLAINT

11. Filed under the *qui tam* provisions of the IFCA, Ind. Code § 5-11-5.5-4, the Complaint purports to allege IFCA violations based upon JPM's alleged reporting and delivery of certain cashier's checks to Ohio rather than Indiana. *See, e.g.*, 4AC ¶ 25. According to the Complaint, the failure to report to Indiana (instead of Ohio) resulted in fraudulent noncompliance

4

with Indiana's Uniform Unclaimed Property Act (the "UPA"), Ind. Code § 32-34-1 *et seq.*, and therefore violated the IFCA.  *See* 4AC ¶¶ 41, 46-47, 64-66.

12.  The Complaint purports to allege three causes of action: (1) violation of IFCA § 5-11-5.5-2(b)(3) for knowingly or intentionally delivering less money to the State of Indiana than the amount recorded on the certificate or receipt JPM received from the State of Indiana with the intent to defraud the State; (2) violation of IFCA § 5-11-5.5-2(b)(4) for knowingly or intentionally authorizing issuance of a receipt without knowing that the information on the receipt is true with the intent to defraud the State of Indiana; and (3) violation of IFCA § 5-11-5.5-2(b)(6) for knowingly or intentionally making or using a false record or statement to avoid an obligation to pay or transmit property to the State of Indiana.  4AC ¶¶ 3, 64-68.

13.  All three causes of action depend on the answer to the threshold question of which state – as between Indiana, some other "non-Ohio state," and Ohio – is entitled to take custody of the specific abandoned cashier's checks in question.  And, the answer to that question is not found in Indiana's Unclaimed Property Act, Ohio's unclaimed property laws, or the laws of any other state.  Rather, the answer is found only by resort to federal law, since states are without the Constitutional authority to direct abandoned intangible property as between the states.  *See, e.g.*, *Texas*, 379 U.S. at 677.  This makes sense as without federal law governing *where* unclaimed property is reported and remitted, multiple states could claim entitlement to the same property, which would trigger numerous problems, including due process violations.  *Western Union Telephone Company v. Pennsylvania*, 368 U.S. 71, 77 (1961) (holding that any result leading to a "double escheat" by the holder violates Full Faith and Credit, and that requiring a holder "to pay a single debt more than once . . . take[s] its property without due process of law.").

## V.     REMOVAL IS PROPER BASED ON FEDERAL-QUESTION JURISDICTION

### A.     This Court Has Subject-Matter Jurisdiction Based on Federal-Question Jurisdiction

14.     A district court has original jurisdiction over all civil actions arising under the laws of the United States.  28 U.S.C. § 1331.  A defendant may remove a state court action to the district court of the United States for the district and division where such action is pending, provided that the district court has original jurisdiction over the subject matter therein.  28 U.S.C. § 1441(a).

15.     Even if a complaint cites and purports to rely on state law, that does not necessarily mean a federal question has not been raised.  A cause of action will arise under federal law if a "state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005).  "Even where a claim finds its origins in state rather than federal law," the Supreme Court has "identified a 'special and small category' of cases in which arising under jurisdiction still lies." *Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013) (citations omitted); *see also Burda v. M. Ecker Co.*, 954 F.2d 434, 438 (7th Cir. 1992) (finding a federal court may look beyond the face of the complaint to determine whether a plaintiff has artfully pleaded his suit so as to couch a federal claim in terms of state law).[4]

16.     Here, the federal question permeating the Complaint is where – as between states – this type of property (cashier's checks) escheats.

17.     Federal law governs the determination of which state is entitled to escheatment of unclaimed property.  The United States Supreme Court, in a trilogy of cases resolving escheatment

---

[4] Based on Relator's past practices in other pending matters against JPM, JPM has reason to believe that prior versions of the complaint include references to and reliance on federal law and that Relator engaged in "artful pleading" to remove those references from his Complaint.

6

disputes among states, developed "priority rules" that establish the order in which states are entitled to take custody of unclaimed property. *See Delaware v. New York*, 507 U.S. 490, 499-500 (1993); *Texas v. New Jersey*, 379 U.S. 674, 679 (1965); *Pennsylvania v. New York*, 407 U.S. 206, 211 (1972). The federal priority rules take precedence over any state unclaimed property law with respect to the determination of what state is entitled to escheatment of unclaimed property "because two states cannot both escheat the same abandoned property." *See Texas*, 379 U.S. at 676; *see also W. Union Tel. Co.*, 368 U.S. at 82.[5]

18. Under the Supreme Court priority rules, unclaimed property escheats first to the state of last known address for the property owner, and if the holder lacks a recorded address for the owner, then to the state where the entity holding the property ("the holder") is domiciled. *Texas*, 379 U.S. at 679; *see also Pennsylvania*, 407 U.S. at 211.[6]

19. In 1978, the United States Congress enacted a narrow statutory exception to the common law priority rules, the Disposition of Abandoned Money Orders and Traveler's Checks Act ("FDA"). 12 U.S.C. §§ 2501–2503. The FDA establishes a unique rule for certain property types – unclaimed money orders, traveler's checks, or similar written instruments – and provides that those instruments escheat to the state of purchase in the first instance and the holder's principal place of business if the state of purchase is unknown, and not to the state of the property owner's address or the holder's domicile.

---

[5] While state law cannot determine to which state property escheats, it can dictate, by property type, if the state will escheat (*i.e.*, take custody of) the property directed to it under federal law and, if so, when and how such abandoned property is to be delivered to the state.

[6] National banks are domiciled and therefore "a citizen only of the state listed in its articles of association as its main office." *OneWest Bank, N.A. v. Melia*, 827 F.3d 214, 219 (2d Cir. 2016). Throughout the period relevant here, JPM has been domiciled in Ohio.

20. Relator's claims against JPM necessarily involve a federal question as illustrated by these four points:

   a. First, the interstate nature of the escheatment dispute raised by Relator's allegations means that, first and foremost, a court must determine if the Supreme Court's priority rules or the FDA's carve-out rules apply to cashier's checks. While JPM reasonably believes that the Supreme Court priority rules apply to cashier's checks—and has been reporting and remitting such property accordingly—no court in the 45 years since the FDA's enactment has decided whether cashier's checks fall within that federal statute's exception to the Supreme Court's priority rules. Indeed, in litigation now pending before the United States Supreme Court, 29 states (including Indiana) have acknowledged that this remains an open question. *Delaware v. Arkansas, et al.,* Nos. 22O145 & 22O146 (consolidated) (Supreme Court) (the "MoneyGram Case"), Dkt. 104 at 8, *available at* https://ww2.ca2.uscourts.gov/specialmaster/special_145.html.

   b. Second, a federal court already has recognized the importance of federal law to Relator's claims that another state was entitled to cashier's checks funds JPM remitted to Ohio. In *State of Illinois ex rel. Ken Elder v. JPMorgan Chase, N.A.*, Case No. 1:21-cv-00085 (N.D. Ill.) ("Illinois Action"), a case initially filed by Relator in the Circuit Court of Cook County, Illinois, JPM removed the case to the U.S. District Court for the Northern District of Illinois. Relator then filed a motion to remand, which the District Court denied. *See* Illinois Action, Case No. 1:21-cv-00085, 2021 WL 3367155 (N.D. Ill. Aug. 3, 2021). In so holding, the District Court "agree[d] with [JPM] that [R]elator's claims necessarily raise a federal issue" (*id*. at *3) and held that Relator's "claims are dependent upon federal law" (*id*. at *4). The District Court further found that the federal

8

question also was "actually disputed," "substantial," and could be resolved "without disturbing the federal-state balance." *Id.* at *5. Moreover, following the District Court's order denying remand, Relator moved to amend his complaint, stripping out all reference to federal law. As the District Court noted, despite Relator "deleting the references to federal law" in his complaint (*see* **Exhibit 3**, Aug. 30, 2021 Tr. at 4:21-23 (Illinois Action)), that amended complaint did not affect the Court's federal question jurisdiction over the case (*see id*. at 3:20-23). For these purposes, the Indiana FCA allegations here are no different than those in Relator's Illinois FCA matter pending in federal court.

      c.      Third, Relator has admitted the key role of federal law to his claims that JPM (and other banks) improperly reported and remitted cashier's checks funds to Ohio instead of some other state. For example, in *State of California ex rel. Ken Elder v. JPMorgan Chase, N.A.*, Case No. CGC-19-579144 (Sup. Ct., San Fran. Cnty.) ("California Action"), after scrubbing his complaint of its many prior references to federal law, Relator convinced the District Court for the Northern District of California to remand the case because Relator was relying solely on California unclaimed property law for his claims and had disavowed any and all reliance on federal law to support his claims. *State of California ex rel. Elder v. JPMorgan Chase Bank, N.A.*, No. 21-cv-00419 (N.D. Cal.), Dkt. 18 (Relator's Motion to Remand) at 5 (Relator asserting that his claims are "based solely on" California state law and that he would not "refer to or rely [upon] any federal law."). However, Relator knows that his claims are dependent on federal law, as evidenced by the fact that shortly after the remand to state court, Relator filed a Motion for Summary Adjudication wherein he repeatedly referenced and relied on federal law. *See* **Exhibit 4** (Relator's Notice of Motion for Summary Adjudication and Supporting Memorandum

(California Action)) at 17 ("Federal law . . . establishes how priorities among the States to escheat intangible property are determined—*i.e.*, the rules that apply to determine which State is authorized to escheat particular intangible property arguably subject to the escheatment laws of more than one State."); *id*. at 26 ("The federal rules of escheatment priorities establish, in the first instance, whether a State has the authority to escheat a particular abandoned intangible property.").[7]

        d.      Fourth, Relator's counsel invoked the presence and primacy of the federal question implicated in the escheatment of cashier's checks in *Harold R. Dill, et al. v. JPMorgan Chase Bank, N.A.*, Case No. 19-cv-10947 (S.D.N.Y.). *Dill* is a putative consumer class action filed in the District Court for the Southern District of New York in 2019 and, on behalf of consumers, it challenges JPM's reporting and remitting of these same cashier's checks to Ohio rather than other states. Relying on *federal law*, Relator's counsel *invoked* federal question jurisdiction as the basis for the district court's jurisdiction over that case. *Dill*, Case No. 19-cv-10947 (S.D.N.Y.), Dkt. 64 (Second Amended Complaint) ¶ 17 ("Because 12 U.S.C. § 2503 obligated JPM to pay the funds of the Checks to the States of Purchase rather than Ohio, and to otherwise comply with the laws of escheatment of the States of Purchase, this action raises a federal question, and this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331.").

21.      For these reasons, the jurisdictional requirements for removal are met. Through removal, JPM brings the federal question plainly implicated by this lawsuit to federal court.

---

[7] The District Court in the Illinois Action denied Relator's motion to remand (and held that federal law was essential to his state FCA claims there) with full knowledge of the prior decision by the federal court in the California Action.

### B. This Court Has Supplemental Jurisdiction

22. All three of Relator's claims necessarily invoke substantial questions of federal law. However, even if one or two claims did not, this Court would have supplemental jurisdiction over those claims.

23. "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). The Supreme Court has noted that the supplemental jurisdiction statute "applies with equal force to cases removed to federal court as to cases initially filed there; a removed case is necessarily one 'of which the district courts . . . have original jurisdiction.'" *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 165 (1997).

24. Relator's claims all arise out of the same set of facts and are part of the same case or controversy. As stated above, because the viability of the claims hinges on resolution of the federal question, the Court's exercise of supplemental jurisdiction is not inconsistent with the considerations set forth in 28 U.S.C. § 1367(c). Accordingly, supplemental jurisdiction under 28 U.S.C. § 1367 of the Complaint's remaining causes of action, if any, is appropriate.

25. Therefore, this is an action over which this Court would have had original jurisdiction had it been filed initially in this Court, and removal to this Court is proper under the provisions of 28 U.S.C. § 1441(a).

### C. All Additional Prerequisites for Removal Are Satisfied

26. For the purpose of removal, venue is proper in this Court because the Action is pending in Marion Superior Court, State of Indiana, and the United States District Court for the

Southern District of Indiana is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

27.     JPM will promptly serve a copy of this Notice upon counsel for Relator and the State of Indiana, and a copy is being filed with the Clerk of the Marion Superior Court, State of Indiana, as required by 28 U.S.C. § 1446(d).

28.     If any question arises as to the propriety of the removal of the Action, JPM respectfully requests the opportunity to present a brief and oral argument in support of its position.

29.     By this Notice and the exhibits hereto, JPM makes no admission of fact, law, or liability relating to the claims in the Complaint, and it expressly reserves the right to assert any and all defenses.

For the foregoing reasons, the Action is properly removed to this Court.

Date: April 7, 2022

Respectfully submitted,

*/s/ Annette England*
Kathleen L. Matsoukas (#31833-49)
Annette England (#25611-49)
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, IN 46204
Telephone: (317) 236-1313
Facsimile:  (317) 231-7433
E-mail: kmatsoukas@btlaw.com
         aengland@btlaw.com

Douglas W. Baruch (*pro hac vice* application forthcoming)
Jennifer M. Wollenberg (*pro hac vice* application forthcoming)
Neaha P. Raol (*pro hac vice* application forthcoming)
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 739-3000
douglas.baruch@morganlewis.com
jennifer.wollenberg@morganlewis.com
neaha.raol@morganlewis.com

*Counsel for Defendant JPMorgan Chase Bank, N.A.*

## CERTIFICATE OF SERVICE

I do hereby certify that a copy of the foregoing *Notice of Removal* was served this 7th day of April, 2022, upon the following by depositing a copy of same in the United States Mail, first class, postage prepaid and via electronic mail.

Kevin W. Betz
Sandra L. Blevins
BETZ + BLEVINS
211 N. Pennsylvania St., Suite 1660
Indianapolis, IN 46204
litigation@betzadvocates.com
sblevins@betzadvocates.com

Michael S. Devorkin
GOLENBOCK EISEMAN ASSOR BELL
& PESKOE LLP
711 Third Avenue
New York, NY 10017
mdevorkin@golenbock.com

*Counsel for Relator Ken Elder*

David S. Golub
Stephen Bloch
SILVER GOLUB & TEITELL LLP
184 Atlantic Street
Stamford, CT 06901
dgolub@sgtlaw.com
sbloch@sgtlaw.com

Erica Sullivan
Deputy Attorney General
Consumer Litigation
Office of Attorney General Todd Rokita
302 West Washington Street
IGCS-5th Floor
Indianapolis, IN 46204
Erica.Sullivan@atg.in.gov

*Counsel for State of Indiana*

/s/ Annette England
Annette England (#25611-49)
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, IN 46204
Telephone: (317) 236-1313
Facsimile: (317) 231-7433
E-mail: aengland@btlaw.com

DMS 22424531.1