UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| STATE OF INDIANA ex rel. KEN ELDER, *Plaintiff and Qui Tam Relator*, v. JPMORGAN CHASE BANK, N.A., *Defendant*. | ) | No. 1:22-cv-00696-JMS-MJD |

**ORDER**

Plaintiff-Relator Ken Elder brings suit on behalf of the State of Indiana alleging that Defendant JPMorgan Chase Bank, N.A. ("JPM") violated the Indiana False Claims and Whistleblower Protection Act (the "IFCA"), Ind. Code § 5-11-5.5-1 *et seq*., when JPM failed to escheat certain unclaimed cashier's checks to Indiana pursuant to the Indiana Unclaimed Property Act (the "UPA"), Ind. Code § 32-34-1 *et seq*., and by submitting allegedly false annual abandoned property reports to the Indiana Treasurer to conceal violations of the UPA. [Filing No. 2-2.] Mr. Elder initially filed suit in the Marion County Superior Court, [Filing No. 2-2], and JPM subsequently removed the case to this Court, [Filing No. 2]. Mr. Elder has filed a Motion to Remand pursuant to 28 U.S.C. § 1447(c). [Filing No. 12.] Additionally, JPM has separately filed a Motion to Dismiss under Federal Rules of Civil Procedure 9(b) and 12(b)(6). [Filing No. 27.] Both motions have been the subject of substantial briefing and are ripe for the Court's review. [Filing No. 13; Filing No. 21; Filing No. 26; Filing No. 28; Filing No. 31; Filing No. 32; Filing No. 35; Filing No. 38; Filing No. 39; Filing No. 40; Filing No. 44; Filing No. 45.]

## I.
## MOTION TO REMAND

The instant dispute concerns whether a state court or a federal court can properly exercise jurisdiction over Mr. Elder's allegations. Mr. Elder has framed this case as a matter of *how* and *if* unclaimed property escheats as a function of state law, and accordingly argues that the state court is the proper place for the resolution of his claims. [Filing No. 13; Filing No. 21.] JPM, however, has framed Mr. Elder's claims as turning first on *where* unclaimed property escheats as a function of federal law, and accordingly argues that this Court has jurisdiction to adjudicate Mr. Elder's claims. [Filing No. 21; Filing No. 31.]

### A. Background

Escheatment is the "ancient" process "whereby a sovereign may acquire title to abandoned property if after a number of years no rightful owner appears." *Texas v. New Jersey*, 379 U.S. 674, 675 (1965). The Court will begin with a discussion of escheatment generally before turning to the specific issues raised in Mr. Elder's Motion to Remand.

#### 1. *Escheatment Generally*

Escheatment of personal property traces its origins to the English common law concept of *bona vacantia* or "personal property without an owner, which became the property of the crown."[1] 27A Am. Jur. 2d Escheat § 1. In the United States, the States have assumed the role of the sovereign, and the escheatment of unclaimed property generally passes to the States. *See Texas*,

[1] The Court notes that, historically, there was a distinction recognized between the reversion of personal property under *bona vacantia* and the reversion of real property pursuant to escheatment. *See, e.g.*, *Christianson v. King County*, 239 U.S. 356, 365–66 (1915); *Cunnius v. Reading School Dist.*, 198 U.S. 458, 469–76 (1905); *Hamilton v. Brown*, 161 U.S. 256, 263–64 (1896). However, these concepts have collapsed in the modern context. *Delaware*, 507 U.S. at 498. For purposes of this Order, "escheat" refers to the process by which a State takes title to both real and personal property.

379 U.S. at 682; *Conn. Mut. Life Ins. Co. v. Moore*, 333 U.S. 541, 547 (1948) ("The right of appropriation by the state of abandoned property has existed for centuries in the common law."); *Delaware v. New York*, 507 U.S. 490, 502 (1993) (The "disposition of abandoned property is a function of the state, a sovereign exercise of a regulatory power over property and the private legal obligations inherent in property.") (cleaned up). Accordingly, many states have adopted laws that govern the manner in which property escheats. *See., e.g.*, Ind. Code § 32-34-1.

*2. Escheatment under Indiana Law*

In Indiana, the disposition of unclaimed property is governed by the UPA. Ind. Code § 32-34-1 *et. seq*; Ind. Code § 32-34-1.5 *et. seq.*[2] Under the UPA, "personal property is presumed abandoned if the owner has not shown any interest in the property for a statutorily prescribed period of time." *Smyth v. Carter*, 845 N.E.2d 219, 222 (Ind. Ct. App. 2006). Uncashed cashier's checks are presumed abandoned after three years. Ind. Code § 32-34-1-20(C); Ind. Code § 32-34-1.5-4.

The UPA requires that an entity holding property that is presumed abandoned annually submit a report to the Indiana Attorney General's Office identifying all the property that it is holding which is subject to escheatment under the UPA. Ind. Code § 32-34-1-26. The UPA authorizes the State of Indiana to escheat abandoned cashier's checks when: (1) "the last known address of the owner is in Indiana"; or (2) the owner's last known address is unknown, the check was issued in Indiana, and the check is not subject to escheatment in the holder's domicile state. Ind. Code § 32-34-1-21. Indiana courts have instructed that the UPA is "designed to serve the dual

[2] The Court notes that the UPA was revised, effective July 1, 2021. *See* 2021 Ind. Legis. Serv. Pub. L.141-2021 (S.E.A. 188); Ind. Code § 32-34-1.5. While the provisions of the UPA that Mr. Elder relies upon in his Complaint were not materially changed, the Court will use parallel citations where appropriate.

purposes of reuniting owners with the value of unclaimed property and giving the state, rather than the holder, the benefit of the use of the unclaimed property pending reclamation by the owner," which serves "a public purpose by raising revenue to benefit all citizens of the state." *Smyth,* 845 N.E.2d at 222.

*3. Escheatment under Federal Law*

While the mechanics of escheatment are governed by state law, "it has always been the unquestioned rule . . . that only the State in which the property is located may escheat." *Texas,* 379 U.S. at 677. While applying this rule is generally straightforward, escheatment can become considerably more complicated in instances involving intangible property which cannot "be located on a map," such as financial instruments. *Id.* In these situations, multiple States potentially could lay claim to the same property, because:

> [t]he creditor may live in one State, the debtor in another, and matters may be further complicated if . . . the debtor is a corporation which has connections with many States and each creditor is a person who may have had connections with several others and whose present address [is] unknown.

*Id.* The Supreme Court has advised that situations such as these implicate constitutional concerns because "the Due Process Clause of the Fourteenth Amendment prevents more than one State from escheating a given item of property." *Id.* at 676.

To prevent disputes between States claiming the right to escheat intangible property, the Supreme Court developed the following common law priority for the escheatment: (1) intangible property escheats first to the State of "the creditor's last known address as shown by the debtor's books and records," and (2) if the creditor's last address is unknown or the creditor's last known address is in a State that does not provide for escheatment, the right to escheat is in the State in which the debtor is incorporated. *Delaware,* 507 U.S. at 500 (citing *Texas,* 379 U.S. at 680–81). In 1974, Congress slightly modified the holding in *Texas* under the Disposition of Abandoned

Money Orders and Traveler's Checks Act ("FDA"), which provides that money orders, travelers' checks, and "other similar written instruments" do not follow the priority established in *Texas*, but instead escheat first to the state in which the instrument was purchased, and then to the state where the property holder has its principal place of business.[3] 12 U.S.C. § 2503. Accordingly, the application of federal law, either under the priority established at common law or the FDA, determines *where* unclaimed property will escheat. In contrast, the application of state law determines *how* and *if* that property will escheat.

*4. Mr. Elder's Allegations*

Mr. Elder filed this case as *State of Indiana ex rel. Ken Elder v. JPMorgan Chase, N.A.*, Cause No. 49D07-1909-PL0037448 in Marion Superior Court, asserting violations of the IFCA, Ind. Code § 5-11-5.5-1 *et seq*. [Filing No. 2-2.] Mr. Elder alleges that JPM violated the IFCA by knowingly failing to escheat unclaimed cashier's checks to Indiana as required by the UPA, in an attempt to exploit Ohio's more favorable escheatment laws. [Filing No. 2-2 at 6-8.] For example, under Ohio law, holders of abandoned property may hold the property for five years before turning it over to the state versus Indiana's required three-year period. [Filing No. 2-2 at 8-9.] Additionally, Ohio law allows abandoned property holders to satisfy their payment obligations by paying only 10% of the abandoned funds' aggregate value as compared to other states that require full payment of the abandoned funds. [Filing No. 2-2 at 8.] Accordingly, Mr. Elder claims that

---

[3] The Court notes that whether the federal common law priority or the FDA priority applies to cashier's checks appears to be an open question. While this issue is not presently before the Court, the Court further notes that a similar issue regarding the priority of unclaimed, intangible property issued by MoneyGram Payment Systems, Inc., is currently pending before the Supreme Court in *Delaware v. Pennsylvania et al.*, No. 22O145 and *Arkansas et al., v. Delaware*, No. 22O146 (collectively, "the MoneyGram Case.") However, federal jurisdiction in the MoneyGram Case arose from the Supreme Court's original jurisdiction over disputes between the States. 28 U.S.C. § 1251.

JPM was able to improperly recoup millions of dollars that should have been returned to Indiana and other states by falsely claiming that the property was subject to the laws of Ohio. [Filing No. 2-2 at 9-10.]

Additionally, Mr. Elder alleges that JPM violated the IFCA by knowingly submitting false reports to the Indiana Attorney General's Office, which "intentionally failed to list the abandoned cashier's checks in JPM's possession that were subject to escheatment to the State of Indiana each year and falsely verified that the reports were accurate." [Filing No. 2-2 at 17.] Because of JPM's allegedly fraudulent conduct, Mr. Elder claims that the State of Indiana was deprived of "likely, at a minimum" over $3 million in uncashed cashier's checks. [Filing No. 2-2 at 21.]

Mr. Elder has filed related and parallel cases in several other states, many of which were removed to federal court. *See, e.g.*, *California ex rel. Elder v. J.P. Morgan Chase Bank*, 2021 WL 1217944 (N.D. Cal. Mar. 31, 2021) (remanding to state court); *Illinois ex rel. Elder v. JPMorgan Chase Bank, N.A.*, 552 F. Supp. 3d 812 (N.D. Ill. 2021) (finding federal jurisdiction under the *Grable* doctrine); *Illinois ex rel. Elder v. U.S. Bank N.A.*, 2021 WL 4942041 (N.D. Ill. Oct. 22, 2021) (remanding to state court); *Minnesota ex rel. Elder v. U.S. Bank*, 2022 WL 781089 (D. Minn. Mar. 15, 2022) (remanding to state court); *New Jersey ex rel. Ken Elder v. JPMorgan Chase Bank, N.A.*, Cause No. 2:21-cv-19462-JXN-CLW (D.N.J.) (remand presently under advisement) (collectively, "the Related Cases").

*5. Procedural History of this Lawsuit*

While Mr. Elder's Fourth Amended Complaint does not make mention of federal law, JPM removed the case to this Court on April 7, 2022 based upon the Court's federal question jurisdiction, 28 U.S.C. § 1331. [Filing No. 2.] In its Notice of Removal, JPM points out that, under what is often referred to as the *Grable* doctrine, federal question jurisdiction may arise

"[e]ven if a complaint cites and purports to rely on state law . . . if a 'state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial.'" [Filing No. 2 at 6 (quoting *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005)).] JPM asserts in its Notice of Removal that "the federal question permeating the Complaint is where – as between states – this type of property (cashier's checks) escheats." [Filing No. 2 at 7.] Specifically, JPM argues that "the interstate nature of the escheatment dispute raised by [Mr. Elder's] allegations means that, first and foremost, a court must determine if the Supreme Court's priority rules or the FDA's carve-out rules apply to cashier's checks." [Filing No. 2 at 8.] Additionally, JPM argues that in one of the Related Cases, the Northern District of Illinois found that questions of federal law were "'actually disputed,' 'substantial,' and could be resolved 'without disturbing the federal-state balance,'" and that Mr. Elder has acknowledged the importance of federal law with respect to his claims in the other Related Cases following remand. [Filing No. 2 at 8-10 (quoting *Illinois ex rel. Elder v. JPMorgan Chase Bank, N.A.*, 552 F. Supp. 3d 812 (N.D. Ill. 2021)).]

On April 27, 2022, Mr. Elder responded to JPM's Notice of Removal by filing a Motion to Remand. [Filing No. 12.]

**B. Standard of Review**

The federal district courts are courts of limited jurisdiction. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). However, federal courts have original jurisdiction over cases arising under federal law. 28 U.S.C. § 1331. A defendant may remove a case from state court to a federal district court if the district court has original jurisdiction over the matter. 28 U.S.C. § 1441. "[F]ederal courts should interpret the removal statute narrowly, resolving any doubt in favor of the plaintiff's choice of forum in state court." *Schur v. L.A. Weight Loss Ctrs.,*

*Inc.*, 577 F.3d 752, 758 (7th Cir. 2009). Accordingly, "[t]he party seeking removal bears the burden of proving the propriety of removal." *Morris v. Nuzzo*, 718 F.3d 660, 668 (7th Cir. 2013).

**C. Discussion**

In support of his Motion to Remand, Mr. Elder argues that remand is appropriate because his claims do not "arise under" federal law for three reasons. [Filing No. 13 at 17-24.] First, Mr. Elder argues that "[o]n its face," the operative Complaint[4] asserts only causes of action based upon Indiana law. [Filing No. 13 at 19.] Secondly, Mr. Elder points out that a defense premised on federal law does not support federal question jurisdiction. [Filing No. 13 at 20.] Mr. Elder argues that JPM's position in support of removal that federal law is a "threshold matter" to his state law claims has been previously rejected by district courts in many of the Related Cases, which concerned substantially similar complaints as in the one presently at issue. [Filing No. 13 at 20-23.] Finally, Mr. Elder argues that this is not a case involving competing claims between states because the Complaint does not assert that "Ohio is competing with Indiana to escheat disputed abandoned cashier's checks." [Filing No. 13 at 24.] Instead, Mr. Elder asserts that he "seeks to remedy [JPM's] evasion of [Indiana's] escheatment law based on a fraudulent invocation of Ohio's more favorable escheatment law." [Filing No. 13 at 24.] Accordingly, Mr. Elder argues that remand is required.

JPM responds that at "the core" of Mr. Elder's allegations is an issue of federal law because Mr. Elder "cannot begin to establish a violation of the [IFCA] without first establishing that JPM

---

[4] The record only contains what is labeled as the Fourth Amended Complaint, [Filing No. 2-3], and no prior version of Mr. Elder's Complaint is presently before the Court. Because jurisdiction is determined "at the time of removal," *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 293 (1938), the Court declines JPM's invitation to speculate on the evolution of Mr. Elder's Indiana-based claims based on filings in the Related Cases, and will treat the Fourth Amended Complaint as the operative complaint in this action.

had a duty to report and remit this unclaimed property to Indiana as opposed to other states." [Filing No. 21 at 7.] Because the question of where unclaimed property escheats is answered by federal law, JPM argues that federal law is essential to Mr. Elder's case in chief, which confers jurisdiction upon this Court. [Filing No. 21 at 14-21.] JPM further argues that Mr. Elder "distorts" Indiana law and that when Indiana has spoken for itself, rather than through a Relator [in other cases], the State of Indiana has taken the position that "whether the federal common law priority rules or the FDA exception applies to cashier's checks . . . remains unanswered." [Filing No. 21 at 26.] Additionally, JPM argues that "a plaintiff may not defeat removal by omitting to plead necessary federal questions." [Filing No. 21 at 26 (citing *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998) (emphasis removed)).] JPM argues that the "evolution" of Mr. Elder's claims in the Related Cases "reveal[s] overtly the importance of federal law" and that "after securing remand from the [Northern District of California] on the proposition that [his related complaint] did not rely on federal law, [Mr. Elder] then argued to the state court that federal law is the source of the 'duty' or 'obligation' that gives rise to his claims against JPM." [Filing No. 21 at 27-29.] Finally, JPM argues that Mr. Elder's claims "directly implicate Ohio's interest and also conflict with the claims he is making elsewhere on behalf of other states, thus pitting state against state" by seeking recovery of the same cashier's check proceeds. [Filing No. 21 at 30-31.]

Mr. Elder replies that to the extent his claims implicate federal law, "it is a potential defense to Mr. Elder's claims that does not provide a basis for federal question jurisdiction." [Filing No. 26 at 6.] Mr. Elder further argues that JPM "misstates" the role of federal law in escheatment and that "[f]ederal priority rules only come into play if and when two or more states assert conflicting claims to escheat the same intangible property." [Filing No. 26 at 10-11.] Mr. Elder argues that "under JPM's scenario, any action by a State's unclaimed property administrator to enforce a state's

unclaimed property laws would necessarily contain a 'threshold' federal issue giving rise to federal question jurisdiction over routine enforcement actions against derelict holders." [Filing No. 26 at 11.] Additionally, Mr. Elder argues that even if federal priorities law presents a threshold issue in the present case, the mere presence of a federal issue "does not automatically confer federal-question jurisdiction." [Filing No. 26 at 14 (quoting *Merrell Dow Pharma, Inc. v. Thompson*, 478 U.S. 804, 813 (1986)).]

JPM filed a sur-reply in which it argues that Mr. Elder "mischaracterizes" the jurisdictional ruling from the Northern District of Illinois in an "attempt to diminish its import." [Filing No. 31 at 2.] JPM further replies that Mr. Elder's argument that "finding federal jurisdiction here would result in all escheatment-based cases being removable to federal court" is incorrect because "[f]or most financial instrument property types, the federal common law priority rule applies" and "there is no question as to which state is entitled to escheat the abandoned property in question." [Filing No. 31 at 3-4.]

The State of Indiana has neither intervened, nor directly indicated a position regarding Mr. Elder's Motion to Remand.

As discussed above, federal courts have original jurisdiction over cases arising under federal law. 28 U.S.C. § 1331. Under the *Grable* doctrine, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 257–58 (2013) (citing *Grable*, 545 U.S. at 313–14). However, the case law is clear that the type of case that confers federal jurisdiction under the *Grable* doctrine is limited to a "special and small category" of state law claims. *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 699-701 (2006) (cleaned up). In practice,

"[f]ederal jurisdiction is rarely established on this basis." *Webb v. Fin. Indus. Regul. Auth., Inc.*, 889 F.3d 853, 860 (7th Cir. 2018) (noting that for a state law claim to arise under federal law, "an issue of federal law must be the 'cornerstone' of the plaintiff's complaint").

In order for a federal question to be "necessarily raised," the "federal question must appear on the face of the complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 399 (1987). Moreover, the resolution of the federal issue must be dispositive. *Chicago Trib. Co. v. Bd. of Trustees of Univ. of Illinois*, 680 F.3d 1001, 1004 (7th Cir. 2012). However, a defense premised on federal law is insufficient to confer federal jurisdiction "even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar*, 482 U.S. at 393; *see also* *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004).

Here, Mr. Elder alleges that JPM violated Indiana law by submitting false reports to Indiana to avoid paying an obligation owed under Indiana law. In theory, Mr. Elder could establish his entire case by relying solely on Indiana law. As the "master of [his] claim[s]," Mr. Elder is entitled to "avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar*, 482 U.S. at 392. Based on the face of the operative Complaint, Mr. Elder has done just that.

As a practical matter, the Court acknowledges that Mr. Elder will likely have to establish that the cashier's checks in question were required to escheat to Indiana, as opposed to some other State, in order to recover. However, the Court disagrees that this means that Mr. Elder's claims "necessarily raise" a federal question as a "threshold issue." This issue is not embedded in Mr. Elder's affirmative case. [Filing No. 2-2.] In fact, federal law is not implicated until JPM argues—in defending against Mr. Elder's claims—that, under federal law, the cashier's checks at issue are not subject to escheatment in Indiana, and therefore JPM did not violate Indiana law. This is a

federal defense, and a federal defense does not give rise to federal-question jurisdiction. *Caterpillar*, 482 U.S. at 399 ("[A] *defendant* cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law") (emphasis original). Moreover, escheatment cases often involve some level of the plaintiff having to establish that the defendant was required to escheat pursuant to the state law at issue. It does not necessarily follow that any time this issue is disputed that federal question jurisdiction would necessarily be implicated.

Both parties rely heavily on the decisions in the Related Cases in their briefing, particularly JPM who points to the finding of federal jurisdiction in *Illinois ex rel. Elder v. JPMorgan Chase Bank, N.A.*, 552 F. Supp. 3d 812 (N.D. Ill. 2021) ("the Illinois JPM Case") to bolster its claim of federal jurisdiction in the present case. However, the Illinois JPM Case is distinguishable from the present case. As the Court observed in that case, Mr. Elder's Complaint "lists a federal statute as a reason why [JPM] owes money to the State of Illinois" and "asserts that a cashier's check constitutes a 'similar written instrument,' such that the escheat rules set out in 12 U.S.C. § 2503 apply to cashier's checks." *Id.* at 817. Here, Mr. Elder defines the source of JPM's obligation as the UPA.[5] [Filing No. 2-2 at 18.] Accordingly, the Court declines to extend the holding in the Illinois JPM Case to the present case.

Finally, the Court disagrees that this case necessarily presents a conflict between the States. Unlike in *Texas* and the MoneyGram Case, which both presented interstate disputes implicating

---

[5] While JPM is correct that Mr. Elder subsequently amended his Complaint in the Illinois JPM Case to delete any references to federal law, Mr. Elder acknowledged that he was "not doing anything to try to revisit [the Court's prior jurisdictional order] by changing language." [Filing No. 20-10 at 5.] Moreover, it is a "well-established general rule is that jurisdiction is determined at the time of removal, and nothing filed after removal affects jurisdiction." *In re Burlington N. Santa Fe Ry. Co.*, 606 F.3d 379, 380 (7th Cir. 2010).

the Supreme Court's original jurisdiction under 28 U.S.C. § 1251, the present case does not involve competing claims by states and no state has asserted any interest in this litigation on its own behalf. Simply because two or more states potentially may have an interest in property does not necessarily give rise to federal question jurisdiction. A case involving conflicting claims by multiple states is not presently before the Court nor is it "necessarily alleged" in the operative Complaint.

Unlike federal courts, state courts are courts of general jurisdiction, "essentially open to all comers on all matters." *E. Cent. Illinois Pipe Trades Health & Welfare Fund v. Prather Plumbing & Heating, Inc.*, 3 F.4th 954, 957 (7th Cir. 2021). A federal court has no power to adjudicate under 28 U.S.C. § 1331 "[w]ithout a federal cause of action—and outside the rare circumstance described in *Grable*." *Id.*. Here, Mr. Elder's affirmative case does not contain a federal cause of action or an embedded federal question. Accordingly, JPM cannot establish that Mr. Elder's claims "necessarily raise" a federal question. *Gunn*, 568 U.S. at 258. Therefore, the Court finds that it lacks subject matter jurisdiction, and the case must be remanded to state court. 28 U.S.C. § 1447(c).

## II.
## MOTION TO DISMISS

Also pending before the Court is JPM's Motion to Dismiss. [Filing No. 27.] Because the Court has determined that remand is appropriate, JPM's Motion is **DENIED** without prejudice for lack of subject matter jurisdiction. If JPM wishes to reassert its dismissal arguments before the Marion Superior Court, it is free to do so as permitted by that court and the Indiana Trial Rules of Procedure.

## III. CONCLUSION

For the foregoing reasons, the Court makes the following rulings:

- Mr. Elder's Motion to Remand, [12], is **GRANTED**;
- JPM's Motion to Dismiss, [27], is **DENIED without prejudice** for want of subject matter jurisdiction; and
- Mr. Elder's claims are **REMANDED** to the Marion County Superior Court.

Date: 9/14/2022

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**